J-S54002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF E.A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  I.P. | No. 769 MDA 2014 |

Appeal from the Order Entered April 4, 2014
In the Court of Common Pleas of Franklin County
Orphans' Court at No(s): 60-Adopt-2013

BEFORE:  LAZARUS, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.                    **FILED OCTOBER 22, 2014**

I.P. ("Father") appeals from the order of the Court of Common Pleas of Franklin County involuntarily terminating his parental rights to his daughter, E.A.B., born in February 2012.[1]  After careful review, we affirm.

K.B.J. ("Mother") and Father were never married.  A.F.J. ("Stepfather") and Mother married in September 2013, when E.A.B. was about seven months old.

Following E.A.B.'s birth, Father and Mother entered into a verbal arrangement whereby Father visited E.A.B. at Mother's home; at that time, Mother was residing with her parents.  Mother and Father established a

---

[1] We note that Father's brief twice refers to termination of Mother's parental rights.  This is clearly a typographical error.  **See** Appellant's Brief, at 6, 8.

schedule whereby Father could visit with E.A.B. three days each week for two hours in the morning.[2]  N.T. Termination Hearing, 4/4/2014, at 11-12.

On December 16, 2013, Stepfather filed a petition for involuntary termination of Father's parental rights; Mother joined in the petition.  The court held a hearing on April 4, 2014, after which the trial court entered a decree terminating Father's parental rights under section 2511(a)(1).  **See** 23 Pa.C.S. § 2511(a) (parent by conduct continuing for period of at least six months immediately preceding filing of petition has either evidenced settled purpose of relinquishing parental claim to child or has refused or failed to perform parental duties).[3]

At the hearing, Mother testified that Father initially denied that the child was his, and that when he came to the hospital when E.A.B. was born he was intoxicated.  **Id**. at 6, 9-10.  Additionally, Mother testified that Father was consistently late for his visits with E.A.B., that he was hostile and angry at the visits, and that he did not focus on E.A.B. during the visits but instead

---

[2] Mother's father is an attorney; he suggested Father contact an attorney of his own in order to establish a formal custody agreement.

[3] Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties.  Parental rights may be terminated pursuant to section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.  **See Matter of Adoption of Charles E.D.M., II**, 708 A.2d 88, 91 (Pa. 1998).

used the time to attempt to reconcile his relationship with her. *Id*. at 12-14. Maternal Grandmother also testified as to Father's visits with E.A.B.:

> Q: —what was your impression how these visits between [Father] and [E.A.B.] were going?
>
> A: They were very hostile. I felt very strongly that the visits were more about [Mother] than they were about [E.A.B.]. They were more about trying to get her back than they were about [E.A.B.], so much to the point that I stated to her on several occasions that I sincerely wondered once she went back to work if he would ever come when she wasn't there. He never stayed the full – well, he either showed up late for the two-hour visit – it was regular to show up an hour-and-a-half late or he wouldn't show up, or if his conversation didn't go with [Mother] the way he wanted it to, he would leave within a half an hour. So it wasn't about visiting with [E.A.B.], it was about [Mother].

*Id*. at 50-51. Maternal Grandmother also testified that Father always had her home and cell phone number, that there was never a time he could not reach her and that she never denied him access to her home for visiting with his daughter. *Id*. at 54. She also stated that Father's last visit was in April 2012, and that Mother went back to work that month. *Id*.

Mother testified that other than a pink teddy bear Father purchased before E.A.B. was born, Father never gave E.A.B. gifts or cards, nor did he purchase diapers, bottles or any type of supplies for her. *Id*. at 18-19. Mother did state, however, that Father paid $50 a week in support until April 2012, which totaled $300. *Id*. at 19. Mother testified that Father last saw E.A.B. in April 2012, and that Father called her six months later, in October 2012, to tell her he was moving to California. *Id*. at 15.

Mother also testified that Stepfather has been a father figure for E.A.B. since she was born, that they are extremely close, that he financially supports E.A.B., that E.A.B. calls him "Daddy," and that Stepfather would like to adopt E.A.B. *Id*. at 21. Stepfather confirmed at the hearing that he had assumed financial responsibility for E.A.B., that if Father's parental rights were terminated he would adopt E.A.B., and if Father's rights were not terminated he would continue financial support for E.A.B. as her stepfather. *Id*. at 42. Stepfather testified that E.A.B. "is [his] daughter" and, "no matter what happens today, that's not going to change." *Id*. at 43. Maternal Grandmother also testified to the relationship between E.A.B. and Stepfather: "She lights up when he walks in the room. He takes care of her. . . . He's Daddy." *Id*. at 56.

Paternal Grandfather also testified. He stated that he and his wife never prevented Father from visiting with E.A.B., and that his daughter never did either. *Id*. at 70.

Mother acknowledged that she moved twice from her parents' residence and did not tell Father, but explained that she did this because she was afraid of him. *Id*. at 31, 34. She also explained that since visits with E.A.B. took place at her parents' home, there was no need for her to inform him of her new address. *Id*.

Father also testified. He stated that he visited with E.A.B. until she was three months old. *Id*. at 78. He also stated that the reason he stopped visiting was that he was "running low on giving [Mother] weekly money,"

and "[Mother] wasn't happy with that[,] and that she said, "You don't have the money, you can't see your daughter. Simple as that." *Id*. at 78-79. He also stated that he was afraid if he showed up at maternal grandparents' property, "they'd probably call the police." *Id*. at 79. However, Father also testified that he felt comfortable with maternal grandfather and that maternal grandfather told him if he ever needed "to talk to him about anything about [E.A.B.] or anything I can just call." *Id*. at 81-82.

Father claims that the trial court erred in terminating his parental rights under section 2511(a)(1). He argues that Mother presented obstacles that impeded communication between Father and E.A.B. and, therefore, the evidence did not establish either that Father failed to perform parental duties or that he exhibited a settled purpose of relinquishing his parental rights. Father also argues the court did not have sufficient information to determine the bond between Father and E.A.B. and the effects of termination on that bond. Our review of the record belies Father's claims.

In reviewing an appeal from the termination of parental rights, we utilize the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires [that we] accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court

might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.

As [was] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*., quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). We have explained this Court's review of a challenge to the sufficiency of the evidence

to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1):

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the postabandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal quotations and citations omitted).

After our review of the record, we find that the court properly determined that the evidence clearly and convincingly showed that Father failed to perform his parental duties for at least six months prior to the filing of the petition.  The court found Father's testimony was not credible and his explanation for his conduct was not supported in the record.

Father readily acknowledged that, other than the $300 he gave to Mother, he did not provide for E.A.B. after she was born.  N.T. *supra*, at 89. He admitted he never bought clothes or toys or sent birthday or Christmas

presents, and that he never reached out to E.A.B. on her birthday. *Id*. Further, Father testified that he felt comfortable with maternal grandfather, but later stated, in an attempt to explain why he did not visit E.A.B., that he was not comfortable going to maternal grandfather's residence. *Id*. at 81-82, 90. Additionally, Father testified that although he told Mother he was planning to move to California, he never did move and has been living in Carlisle since 2000. *Id*. at 98.

Appellees, Mother and Stepfather, have established by clear and convincing evidence that Father, for a period exceeding six months prior to the filing of the petition, has failed to perform his parental duties. He failed to support E.A.B., even while employed, and failed to visit her. In fact, Father had no contact with E.A.B. for almost eighteen months prior to the filing of the petition. The trial court did not find Father's explanations for either of these failings credible, and in fact determined that there were no actual obstacles or limitations to his performance of parental duties that he did not have control over himself.

This Court has held that parental duty requires affirmative performance, more than financial obligation, but a "continuing interest in the child and a genuine effort to maintain communication and association with the child." *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003). There is nothing in the record before us to support a finding of genuine or continuing effort by Father. In sum, Father's own lack of effort created the obstacle to his relationship with E.A.B. *See In re Z.P.*, 994 A.2d 1108, 1125 (Pa.

Super. 2010) (child's life cannot be put on hold in hope that parent will summon ability to handle responsibilities of parenting).

With respect to section 2511(b), the trial court found that given E.A.B.'s age and the lack of contact with Father for almost two years, there is no bond between Father and E.A.B. and that termination would not adversely affect her developmental, physical or emotional needs and welfare. Additionally, the court determined Stepfather was a stable influence on E.A.B. and was able and willing to provide for her developmental, physical and emotional needs. The court, therefore, concluded that termination of Father's parental rights was in E.A.B.'s best interests. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005).

After a careful review of the trial court's application of the law to the facts of this case, we find no reason to disturb the court's conclusions. The court's findings and credibility determinations are supported in the record. We further find that the trial court committed no abuse of discretion or error of law. *See In re R.J.T.*, *supra* (we defer to trial judge so long as factual findings are supported by record and court's legal conclusions are not result of error of law or abuse of discretion).[4]

_____

[4] The guardian *ad litem* for E.A.B. has also filed a brief adopting the trial court's position that termination of Father's parental rights is in E.A.B.'s best interests.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/22/2014</u>